Estate of Calderwood v ACE Group Intl. LLC (2017 NY Slip Op 08750)





Estate of Calderwood v ACE Group Intl. LLC


2017 NY Slip Op 08750


Decided on December 14, 2017


Appellate Division, First Department


Kapnick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 14, 2017
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman,J.P.
Sallie Manzanet-Daniels
Karla Moskowitz
Barbara R. Kapnick
Troy K. Webber,JJ.


650150/15 

[*1]Estate of Alexander Calderwood, Plaintiff-Appellant,
v
ACE Group International LLC, et al., Defendants-Respondents.



Plaintiff appeals from the orders of the Supreme Court,
New York County (Shirley Werner Kornreich, J.), entered March 1, 2016, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the first (declaratory judgment/injunction that plaintiff is a Member of AGI), second (declaratory judgment that defendants owe fiduciary duties to plaintiff), fourth (access to AGI's books and records under Delaware law), fifth (accounting), and sixth (constructive trust) causes of action in the amended complaint (AC), and denied plaintiff's motion to include in the second amended complaint the causes of action in the AC that had been to declare upon the first cause of action that plaintiff is not a member of AGI with all the rights that the decedent held under AGI's LLC Agreement, to declare upon the second cause of action that defendants do not owe fiduciary duties to plaintiff.




Ball Janik LLP, Portland, OR (James T. McDermott and Ciaran P.A. Connelly of the bar of the State of Oregon, State of Washington, State of Idaho and District of Columbia, admitted pro hac vice, of counsel), for appellant.
Squire Patton Boggs (US) LLP, New York (Richard L. Mattiaccio and Paul Myung Han Kim of counsel), for respondents.



KAPNICK, J.


In November 2013, nonparty Alexander Calderwood (Alex) died unexpectedly at age 47, intestate, and his father, Thomas B. Calderwood, was appointed the personal representative of Alex's Estate, the plaintiff in this action (the Estate). During his lifetime, Alex apparently enjoyed much success as an entrepreneur, including in the boutique hotel industry. He was the founder and creator of the Ace brand of boutique hotels, which had hotels located in New York, Seattle, Palm Springs and London. In 2011, Alex sought to buy out his then business partners, but needed capital to do so. Thus, in conjunction with defendant Ecoplace LLC (Ecoplace), a company controlled by defendant Stefanos Economou (Economou), he formed ACE Group International LLC (AGI), a Delaware limited liability company. AGI was formed as a management company with its primary assets being the management contracts it has with the various Ace hotel properties, as well as rights to the Ace brand and related intellectual property.
Pursuant to the AGI limited liability agreement (LLC Agreement), Ecoplace invested $10,000,000 into AGI, and in exchange, received a 33.33% interest in the company with a $10,000,000 preferred return and veto rights over certain "major decisions." Alex retained a 66.67% interest in AGI along with control of AGI's day-to-day operations. Alex later transferred a portion of his interest to certain AGI executives, leaving him, at the time of his death, with a 51.74% majority stake in AGI.
Following Alex's death, the Estate sought to value the interests that Alex held in AGI in order to file an accurate accounting for estate tax purposes. Counsel for the Estate wrote to AGI, requesting access to its books and records for this purpose. Apparently, however, AGI did not provide the information that the Estate needed.
In April 2014, the Estate also was in conversation with counsel for Ecoplace regarding its offer to buy the Estate's entire ownership interest for $200,000. Counsel's letter stated that AGI "is likely to shortly require a substantial infusion of capital in order to (i) properly operate the Business and (ii) remedy certain disruptions to the Business resulting from Alex's unfortunate passing." The letter further explained that
"[a]lthough the Estate is entitled to distributions from the Company in certain circumstances, given the current financial position of the Company and, more importantly, the fact that ECOPLACE is entitled to receive its initial investment amount of $10,000,000 (plus any additional capital contributions made pursuant to the above) before the Estate receives any such distributions, we do not believe that the Estate will realize any sort of financial benefit from its ownership interest in the foreseeable future (if ever)."
The Estate refused Ecoplace's offer and, in January 2015, commenced this lawsuit. On March 6, 2015, the Estate filed an amended complaint (AC) asserting six causes of action, seeking (1) a declaration that the Estate is a member of AGI with all of Alex's rights; (2) a declaration that defendants owe the Estate fiduciary duties; (3) a declaration that the Estate may share AGI's financial and business information, for purposes of pursuing this litigation, with existing and prospective investors, lenders or other sources of capital;[FN1] (4) an order requiring defendants to provide the Estate with AGI's books and records; (5) an accounting of AGI; and (6) the imposition of a constructive trust on Ecoplace's membership interests in AGI and on [*2]AGI's assets, for the benefit of the Estate. Defendants answered, but then moved to dismiss, pursuant to CPLR 3211(a)(7), for failure to state a claim. Thereafter, the Estate moved for leave to file a supplemental amended complaint (SAC), in which some of the causes of action were the same or similar to those in the AC, while others were new causes of action, including claims for breach of contract.
The motion court dismissed the claims for a declaration that the Estate is a member of AGI with all of Alex's rights, a declaration that defendants owe the Estate fiduciary duties, an accounting, and the imposition of a constructive trust, for failure to state a claim. The motion court also dismissed the claim for an order requiring defendants to provide the Estate with access to AGI's books and records as moot, because to the extent the Estate was entitled to financial information in order to value its assets in the probate action, it was being dealt with in discovery.[FN2]
Ultimately, the parties disagree on the Estate's rights and status under the LLC Agreement [FN3]. The Estate contends that it stepped into Alex's shoes upon his death, and that it possesses all of his rights and privileges as a Member under the LLC Agreement. Defendants, on the other hand, contend that under the terms of the LLC Agreement, the Estate is considered the successor in interest of a Withdrawing Member (Alex) with rights only to potential distributions, and no rights to control or participate in the running of the company. In support of their argument, defendants point to section 9.7(b) of the LLC Agreement, which provides, in relevant part, that
"[u]pon the death or disability of a Member . . . (the "Withdrawing Member"), the Withdrawing Member shall cease to be a Member of the Company and the other Members and the Board shall . . . have the right to treat such successor(s)-in-interest as assignee(s) of the Interest of the Withdrawing Member, with only such rights of an assignee of a limited liability company interest under the Act as are consistent with the other terms and provisions of this Agreement and with no other rights under this Agreement. Without limiting the generality of the foregoing, the successor(s)-in-interest of the Withdrawing Member shall only have the rights to Distributions provided in Sections 4 and 10.3, unless otherwise waived by the other Members in their sole discretion."
Thus, according to defendants, under the terms of the LLC Agreement, at the time of Alex's death he became a "Withdrawing Member" and "cease[d] to be a Member of the Company" and his successor in interest, the Estate, retained only the rights to distributions.
The Estate, however, argues that § 18-705 of the Delaware Limited Liability Company [*3]Act (LLC Act) is a mandatory provision pursuant to which the personal representative of a deceased member may exercise all of the member's rights, notwithstanding the limitations contained in the LLC Agreement. Section 18-705 provides that
"[i]f a member who is an individual dies . . . the member's personal representative may exercise all of the member's rights for the purpose of settling the member's estate or administering the member's property, including any power under a limited liability company agreement of an assignee to become a member" (6 Del C § 18-705).
The Estate argues that because section 18-705 refers to "all of the member's rights" (emphasis added), the statute does not limit the rights of a personal representative to those rights given to a successor in interest under the LLC Agreement. We disagree. First, "under the Act, the parties to an LLC agreement have substantial authority to shape their own affairs and . . . in general, any conflict between the provisions of the Act and an LLC agreement will be resolved in favor of the LLC agreement" (Achaian, Inc. v Leemon Family LLC, 25 A3d 800, 802-803 [Del Ch 2011]). Second, the LLC Act's "primary function is to fill gaps, if any, in a limited liability company agreement" (id. at 802). This gap-filling provision is not required here because the LLC Agreement specifically addresses the exact situation in which the parties currently find themselves.
In an effort to further bolster its argument that section 18-705 controls here, the Estate relies on the lack of the phrase "unless otherwise provided in a limited liability company agreement" in section 18-705 as evidence of its mandatory status. However, and as noted by the motion court, this argument has already been considered and rejected by the Delaware courts (see R & R Capital, LLC v Buck & Doe Run Valley Farms, LLC, 2008 WL 3846318, *5, 2008 Del Ch LEXIS 115, *20 [Del Ch, Aug. 19, 2008, C.A. No. 3803-CC] [finding that a provision of the LLC Act "not containing petitioners' magical phrase was nonetheless permissive and subject to modification"]; see also Elf Atochem North America, Inc. v Jaffari, 727 A2d 286, 291 [Del 1999] [expressly stating that the LLC Act "is replete with fundamental provisions made subject to modification in the Agreement (e.g. unless otherwise provided in a limited liability agreement . . . .')"]). Also notable, section 18-705 contains the phrase "may exercise" (emphasis added), which "connotes the voluntary, not mandatory or exclusive, set of options" (R & R Capital, 2008 WL 3846318, *5, 2008 Del Ch LEXIS 115, *20, quoting Elf Atochem North America, Inc., 727 A2d at 296).
We also reject the Estate's argument that section 18-705 is "likely" to be mandatory under Delaware law because the purpose of section 18-705 is, in part, to protect third-party successors in interest. The Estate contends that section 18-705, in this case, "protects vulnerable heirs' interests by allowing them to exercise all of the deceased member's rights." However, and as the motion court correctly stated, "[t]o hold that § 18-705 alters a member's rights upon death in a manner contravening the LLC Agreement is inconsistent with the well settled law articulated by the Delaware courts - that the substantive rights of LLC members are governed by contract." This interpretation is in line with Chancellor Chandler's statement in R & R Capital, LLC, that "[f]or Shakespeare, it may have been the play, but for a Delaware limited liability company, the contract's the thing. Ultimately, it is the contract that compels the Court's decision in this case because it is the contract that defines the scope, structure, and personality of limited liability companies'" (2008 WL 3846318, *1, 2008 Del Ch LEXIS 115, *1). Thus, whether section 18-705 is mandatory or permissive, we, nonetheless, find that in this case, it does not override section 9.7(b) of the LLC Agreement.
In further attempting to get around the provisions of section 9.7(b) of the LLC Agreement, the Estate argues that it is ambiguous and lacks sufficient clarity to allow the parties' intent to be resolved without the benefit of extrinsic evidence. Specifically, the Estate contends [*4]that section 9.7(b) does not limit Alex's rights, and ergo the Estate's rights as his assignee, but rather, only those of his "successor(s)-in-interest." In support of this argument, the Estate contends that because section 9.7(b) does not unambiguously abrogate section 18-705 of the LLC Act, it must mean that the "LLC Agreement recognizes that the Act conveys certain rights to assignees and specifically allows the successor-in-interest to exercise all the rights of an assignee under the Act . . . ." First, and as already noted, "under the Act, the parties to an LLC agreement have substantial authority to shape their own affairs and . . . in general, any conflict between the provisions of the Act and an LLC agreement will be resolved in favor of the LLC agreement" (Achaian, Inc., 25 A3d at 802-803). Second, "[a]n ambiguity exists when the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings" (Nicholas v National Union Fire Ins. Co. of Pittsburgh, PA, 83 A3d 731, 735 [Del 2013][internal quotation marks and alteration omitted]). The language at issue here, "[u]pon the death or disability of a Member . . . (the "Withdrawing Member"), the Withdrawing Member shall cease to be a Member of the Company," is not susceptible to different interpretations, but rather states clearly the repercussions upon the death of a Member. Nothing in the text of section 9.7(b) suggests that a successor in interest is entitled to exercise all of the rights Alex once held.
The Estate next contends that a determination that the Estate is not a Member of AGI would lead to the absurd result of leaving the Estate, as the 51.74% majority owner of AGI, with no participation or control rights, while simultaneously leaving the minority interest holder - Ecoplace - with full control of AGI. However, this result is not absurd as the Delaware courts have acknowledged that "it is far more tolerable to have to suffer a new passive co-investor one did not choose than to endure a new co-manager without consent" (Milford Power Co., LLC v PDC Milford Power, LLC, 866 A2d 738, 760 [Del Ch 2004]; see also Achaian, Inc., 25 A3d at 804 n 14). Thus, we affirm the motion court's dismissal of the Estate's first cause of action and modify only to the extent of issuing a declaratory judgment that the Estate is not a member of AGI.
The Estate's second cause of action, seeking a declaration that defendants owe it fiduciary duties, was properly dismissed by the motion court, although we would affirm the dismissal on other grounds, and modify only to the extent of issuing a declaratory judgment that defendants do not owe fiduciary duties to the Estate. The motion court dismissed the second cause of action because it found that the parties were seeking an advisory opinion and that the Estate had not pleaded any facts to suggest that defendants had breached any fiduciary duty recognized under Delaware law. We do not agree that such a declaration would constitute an advisory opinion. "The fact that the court may be required to determine the rights of the parties upon the happening of a future event does not mean that the declaratory judgment will be merely advisory" (New York Pub. Interest Research Group v Carey, 42 NY2d 527, 530 [1977]). Indeed, "[i]n the typical case where the future event is an act contemplated by one of the parties, it is assumed that the parties will act in accordance with the law and thus the court's determination will have the immediate and practical effect of influencing their conduct" and, as such, a declaration does not constitute an advisory opinion (id. at 530-531).
The Estate's argument that it is owed fiduciary duties by defendants is based on a strained interpretation of the law. The Estate simply pronounces that it is bound by the LLC Agreement, and thus Ecoplace, as a managing member of AGI, and Economou, who controls Ecoplace, owe the Estate fiduciary duties [FN4]. In support of its position, the Estate relies on Feeley v NHAOCG, [*5]LLC (62 A3d 649, 661 [Del Ch 2012]) and sections 18-1101 and 18-1104 of the LLC Act for the proposition that "fiduciary duties are owed by managers of a limited liability company to others bound by the limited liability company's operating agreement unless those duties are expressly disclaimed." Because there is no disclaimer, the Estate contends that defendants owe it fiduciary duties. Moreover, according to the Estate, because section 18-1101 expressly references "another person that is a party to or is otherwise bound by a limited liability company agreement" (6 Del C § 18-1101[c]), and because section 18-1104 states that "the rules of law and equity relating to fiduciary duties . . . shall govern" (6 Del C § 18-1104), "default" fiduciary duties should be read into the LLC Agreement.
The Estate's pronouncement that it is a party bound by the LLC Agreement and its reliance on the imposition of "default" fiduciary duties are unfounded. Although the Feeley court referenced sections 18-1101 and 18-1104, the court did not define or explain what is meant by "otherwise bound by a limited liability company agreement" (6 Del C § 18-1101[c]). To the extent that courts have considered the term "otherwise bound," it has been in the context of creditors of the LLC, not successors in interest (see In re BHS & B Holdings LLC, 420 BR 112, 145 n 13 [Bankr SD NY 2009] [stating that "[e]ven creditors may be otherwise bound' by an LLC agreement that expressly waives fiduciary duties as between the LLC's members"]), affd as mod 807 F Supp 2d 199 [SD NY 2011]. Moreover, a case from the Supreme Court of Delaware expressly calls into question whether the LLC Act does or does not impose "default" fiduciary duties (Gatz Properties, LLC v Auriga Capital Corp., 59 A3d 1206, 1219 [Del 2012] [finding that "the issue [of] whether the LLC statute does — or does not — impose default fiduciary duties is one about which reasonable minds could differ"]). Lastly, the Feeley court was tasked with determining a dispute between a managing-member and a nonmanaging-member of an LLC; it did not address whether fiduciary duties could or did indeed run from a member to a nonmember. Further, we note that the Estate has asserted in its SAC new causes of action for breach of contract based on the duty of good faith and fair dealing related to its rights to distributions as well as its alleged right to call Ecoplace's shares. Neither of these claims are impacted by our decision, and, indeed, are still viable claims based upon the motion court's decision granting the Estate's motion for leave to file the SAC.
We find that the Estate's claims for an accounting and constructive trust were properly dismissed, although we affirm the dismissal on different grounds. The Estate correctly contends that New York rather than Delaware law governs accounting and constructive trust claims. New York law, as the law of the forum, governs matters of procedure (Martin v Dierck Equip. Co., 43 NY2d 583, 588 [1978]), and determines whether a matter is procedural or substantive, i.e., generally, whether it pertains to the remedy or the right (Tanges v Heidelberg N. Am., 93 NY2d 48, 54-55 [1999]). Under New York law, an accounting is an equitable remedy (Barry v Clermont York Assoc. LLC, 144 AD3d 607, 608 [1st Dept 2016]), "premised upon the existence of a fiduciary relationship" (Castellotti v Free, 138 AD3d 198, 210 [1st Dept 2016]). The accounting claim was, thus, correctly dismissed against defendants because, as previously determined, they do not owe the Estate any fiduciary duties (see id.).
The constructive trust claim is also an equitable remedy, the purpose of which is the "prevention of unjust enrichment" (Simonds v Simonds, 45 NY2d 233, 242 [1978]). Here, there is no reason to impose a constructive trust over Ecoplace's membership interest in AGI, which Ecoplace acquired legitimately in exchange for $10 million (see Simonds, 45 NY2d at 242). As [*6]for Economou, he does not own a membership interest in AGI on which to impose a constructive trust. Lastly, with respect to AGI, the Estate failed to show why, in equity and good conscience, AGI should not be allowed to retain its assets (see id.).
Finally, the Estate is not entitled to inspect AGI's books and records (fourth cause of action), because it is not a member of AGI (see section 6.1 of the LLC Agreement; see also Prokupek v Consumer Capital Partners LLC, 2014 WL 7452205, *3, 7, 2014 Del Ch LEXIS 271, *6, 18 [Del Ch, Dec. 30, 2014, C.A. No. 9918-VCN]).
Accordingly, the orders of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered March 1, 2016, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the first (declaratory judgment/injunction that plaintiff is a Member of AGI), second (declaratory judgment that defendants owe fiduciary duties to plaintiff), fourth (access to AGI's books and records under Delaware law), fifth (accounting), and sixth (constructive trust) causes of action in the amended complaint (AC), and denied plaintiff's motion to include in the second amended complaint the causes of action in the AC that had been dismissed, should be modified, on the law, to declare upon the first cause of action that plaintiff is not a member of AGI with all the rights that
the decedent held under AGI's LLC Agreement, to declare upon the second cause of action that defendants do not owe fiduciary duties to plaintiff, and otherwise affirmed, without costs.
All concur.
Orders, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered March 1, 2016, modified, on the law, to declare upon the first cause of action that plaintiff is not a member of AGI with all the rights that the decedent held under AGI's LLC Agreement, to declare upon the second cause of action that defendants do not owe fiduciary duties to plaintiff, and otherwise affirmed, without costs.
Opinion by Kapnick, J. All concur.
Friedman, J.P., Manzanet-Daniels, Moskowitz, Kapnick, Webber, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 14, 2017
CLERK



Footnotes

Footnote 1: This cause of action is not at issue on this appeal.

Footnote 2: Discovery proceeded during motion practice and defendants produced, inter alia, a consolidated balance sheet, income statement, income and expense forecast, cash flow forecast and a projected fees cash flow for various periods covering 2014 and 2015, with the projections forecasted as far out as 2023. The motion court further ordered defendants to produce interim balance sheets, interim income statements and actual cash flows for 2013-2015, as well as the 2016 budget.

Footnote 3: Pursuant to the LLC Agreement, the rights of the Members "shall be governed by, and interpreted in accordance with, the Laws of the State of Delaware," and each Party "irrevocably submit[ed] to the exclusive jurisdiction of the New York State courts . . . ." 

Footnote 4: On appeal, the Estate does not argue that AGI owes it fiduciary duties, nor could it make that argument, because if an LLC does not owe a fiduciary duty to a member (see Furchtgott-Roth v Wilson, 2010 WL 3466770, *5, 2010 US Dist LEXIS 92507, *14 [SD NY, Aug. 31, 2010, No. 09-Civ-9877(PKC)]), then a fortiori it does not owe a fiduciary duty to a nonmember.